Deborah Peterson and others, versus the Islamic Republic Bank and others. Counsel, you may take the podium. Good afternoon, Your Honors. May it please the Court. My name is Jim Bonner, and I'm honored to represent the plaintiffs in this action. In multiple significant respects, the parties actually agree concerning the steps this Court should take in response to the Supreme Court's GVR order. All parties agree that the Court should reinstate its opinion with respect to two issues. The location of the relevant assets and the impact of the releases that certain plaintiffs had signed to end the previous litigation. The parties also agree that the Court should remand this case to permit the District Court to consider plaintiff's claim under the newly amended 22 U.S.C. 8772. Defendant Ubaid does claim that before that remand, this Court must first consider Ubaid's personal jurisdiction defense. But the Court has twice rejected that contention, and Ubaid merely repeats verbatim its previous arguments. Thus, it's clear that the Court should reinstate its opinion with respect to the releases and the location of the relevant assets and remand the case to the District Court for the consideration of the 8772 claims. Why shouldn't we, or should we consider simply in order to move things along appropriately, to consider this, what you have referred to, I think, the so-called, what we call a Jacobson remand. And that is, let's focus on the NDAA, the new statute, and ask the District Court, because so much seems to ride on that, ask the District Court, as a Jacobson remand, to decide that issue. And it has issues of fact. It has other issues of constitutional law, including due process questions. Why not focus sharply on that and ask the – and not ask, but remand that part of the case under a Jacobson remand to the District Court? I do think, Your Honor, that a Jacobson remand would be an acceptable result here. But just to be clear, I do believe that when the Court remanded the 8772 claim, it should also remand with respect to the issues that it left open in the Peterson 2 decision with respect to the other claim, what I will refer to as our Kohler claim. And the benefit of that, Your Honor, is that it's a much more efficient process than would take place if you were just to remand the 8772 claim. Explain why. Please, I'm sorry. Explain what you mean by the Kohler claim. I think I know. But explain what you mean by the Kohler claim, and then tell me why it would be more efficient, please. The Kohler claim, Your Honor, is the common law claim that was at issue in the previous case, and that is that the plaintiffs had requested that the court order Clearstream, which is a garnishee, which is subject to the personal jurisdiction of the New York courts, to bring assets that are currently being held in Luxembourg back into this jurisdiction in order to facilitate execution. And there's a long line of case law that Your Honors went through in the Peterson 2 opinion, which permits that remedy in these circumstances. And at the end of that opinion, Your Honors left open certain issues that the court of the district court would have to assess on remand. Those were, for example, comity issues with respect to whether the assets could be reclaimed from Luxembourg. There were also personal jurisdiction defenses. I'm sorry. I still don't quite understand. I understand now what you're talking about. I think I did before. But my question is, if you are to prevail on the, what is it, NDAA, the new statute, which would include a decision as to jurisdiction, personal jurisdiction over Clearstream, why shouldn't that – why not do that separately and first before we do anything else? Why Kohler? Why Kohler, which is so complicated in terms of its – what we call the conundrum effect of it. Isn't it more complicated? I do agree that in certain respects, Your Honor, there would be additional findings required of the district court, but there's no reason why the district court can't handle all of these findings at one time. And the reason why, Your Honor, I think it's inadvisable to just hold the Kohler claim in abeyance is that the defendants are asserting certain defenses that apply only with respect to the statute. For example, Bank Markazi has previewed its constitutional argument with respect to 8772. Now, if we were to succeed even in the district court and then fail on appeal here in the Second Circuit, the court would then have to remand yet again the Kohler claim to the district court in order for the court to consider the various defenses that the court outlined in the Peterson 2 opinion. And so we have a very, very inefficient process there, Your Honor, which doesn't match the way that courts usually handle claims where there are multiple avenues of relief for plaintiffs to pursue with respect to the relief that they're seeking. So in most cases, of course, if the plaintiffs assert two different claims, the courts will assess those claims at the same time, and that's what we would advocate that the court do here. This case relates to a 37-year-old terrorist attack, Your Honor. The case itself is seven years old. Unfortunately, our plaintiffs are dying on a monthly basis. And in addition to that, Your Honor, there are efforts afoot by Markazi and Clearstream to dissipate these assets or at least to prevent the court from granting the relief that the plaintiffs are seeking. I understand that yesterday in Luxembourg, there was a hearing where Markazi was seeking to enjoin Clearstream from ever transferring these assets to the United States. And so, Your Honor, all of that counsels in favor of trying to expedite this case and have all the rulings that the district court needs to make made at one time. And after that process occurs, this court and potentially the Supreme Court can assess all of the various defenses that the defendants have to all of the claims so that we can bring this to a resolution quicker. I'm sorry, Your Honor. I just said continue. Thank you. I think that the arguments that Markazi and Clearstream make for holding the Kohler claim in abeyance, they don't support that result at all. Most importantly, Your Honor, the GVR order's text belies the defendant's claim that the order contains a veiled instruction to hold that claim in abeyance. The Supreme Court's order merely remands to this court for further consideration in light of the amended 8772. That language, Your Honors, and the uniform case law, every case says this, that we cite in our briefs demonstrate that the GVR order suggests no particular result, much less that the court delay considering the 8772 claim or considering the Kohler claim so that it can only focus on the 8772 claim. And I think, Your Honors, if the Supreme Court had concluded that the Kohler claim should be held in abeyance or that it should be reversed, it would simply have said so, or it would have followed the defendant's recommendation to consider Peterson 2 on the merits. It did neither. So there's no reason to believe here that the Supreme Court is trafficking in veiled messages. So the defendant's suggestion that the GVR order really means that the Supreme Court wanted to reverse Kohler or that it didn't want that case considered by this court and the district court is incorrect. It's at odds with both the case law and with the language that the Supreme Court used in the GVR order. In addition to that, Your Honors, the defendant's repetition of the arguments that they have twice made unsuccessfully with respect to the merits of the Kohler claim also did not justify holding that claim in abeyance or reconsidering it here. The defendants have not cited a single case that undermines the court's Peterson 2 analysis, and they also have conceded that 8772 has no substantive impact on the Kohler claim. To the extent, however, that the court nevertheless allows defendants a third bite at the same apple, reconsidering the Kohler analysis, the law still squarely supports Peterson 2's holding, Your Honors. To begin with, the defendants continually misstate the issue that the court decided in Peterson 2. The issue is not, as they claim, whether the defendants can execute against sovereign assets that are located abroad. Rather, Your Honors, Peterson 2 considered when a sovereign voluntarily puts its assets in the control of a garnishee that's subject to the jurisdiction of the New York courts, can those courts order that garnishee to return the assets to the state to facilitate execution? And this court's conclusion regarding that issue followed well-established precedent. The Kohler case is quite clear in that regard. We also cite various opinions from the Supreme Court and this court in our briefs that say that courts have the power to take a wide variety of acts designed to preserve the collectibility of assets. And I won't repeat what we have to say about the NML decision, but Your Honors addressed this issue at length in the Peterson 2 opinion, and we have also briefed it here again. And NML is directly at odds with the idea that the defendant suggests, that is, that there is some blanket immunity that applies to foreign sovereign assets that are located abroad. NML said, look solely at the text of the FSIA, and as the court found in Peterson 2, the FSIA doesn't contain any protection with respect to assets that are located abroad. As a result of that, Your Honor, we hear a great deal in the defendant's briefs with respect to what the Solicitor General had to say in the Supreme Court. I think one thing that's interesting about what the Solicitor General did is it first suggested that certiorari should be denied. So they were not so concerned with the various policy implications that both the Solicitor General and the defendants trot out so as to assert that the Supreme Court should review the decision in the first place. And in any event, this court and the NML court both considered the very same policy implications that are the focus of the defendant's brief, and both courts rejected them as a basis for finding this blanket immunity that the defendants assert exists here. But I want to turn very briefly, Your Honor, to something that I think is quite important here. As I said, this case is 37 years old. There are efforts afoot to try to prevent these assets from ever being collected by the defendants. In these unique circumstances, Your Honors, the court should issue its mandate immediately under a federal law. Mr. Bonner, this is Judge Loyer. Did you ask for a stay or anything like that? Is there anything like that in effect? I mean, you talked earlier about dissipation of assets, but have you done anything to prevent that? We have served restraining notices, Your Honor, on both Clearstream and on Marcazi. And so those assets, as far as we're concerned, are restrained and they're prevented from being dissipated. In addition to that, Your Honor, it's our understanding that the current state of sanctions law prevents Clearstream from paying these assets to Marcazi. But I do think, Your Honor, that the overall point is that there are certainly efforts afoot to try to dissipate these assets. And all that we're asking for is a quick remand. Let us get back to the district court and let us try to find out whether the plaintiffs are actually entitled to the collection of these assets. We've done our level best to protect them. So your view is that we don't need to immediately reinstate anything. We can, given what the Supreme Court has done, immediately issue a Jacobson remand, even though technically our opinion is vacated. We can see whatever findings the district court makes and take it up thereafter and reinstate what we want and deal with the findings made by the district court. Is that your view? I do think, Your Honor, that as a technical matter, you do need to reinstate certain portions of your opinion. That's also what I thought. Of course we do. Of course we do. Otherwise, we're not sending anything back. Jacobson or otherwise. So we could reinstate certain things, but I understood in answer to your question, to the questions posed by my colleague just now, that you wanted an immediate Jacobson remand without reinstating. So now it's actually you want – you've clarified that we need to reinstate something, some component. Otherwise, we don't have the power to remand anything. Yes, Your Honor. I think you have two choices here, Your Honor. You can either reinstate the entire opinion, which is what we've advocated, or you could go the Jacobson remand route. But in that case, you do need to reinstate the opinion with respect to the release issue and with respect to the location of the assets in any event. But that's perhaps the choice that's before the court. We advocate the first alternative, Your Honor, but the second would be an acceptable result as well. Thank you. May I just ask one more question? Yes, of course. You suggested, Mr. Bonner, that there was no connection whatsoever between what I described, what I called – what you called the Kohler claim and the 8772 claim. Why is that? Because aren't there issues in Kohler involving international comedy and so on that also relate to the NDAA claim? Your Honor, the NDAA claim, 8772, contains a specific provision that says that issues with respect to international comedy will not prevent the collection of the assets by the plaintiffs. So that comedy issue is relevant to the Kohler claim but is not relevant to the 8772 claim. Obviously, there's overlap. Both claims are seeking the collection of the same assets, but certainly, there could be findings made with respect to 8772. The plaintiffs are entitled to relief under that statute, in which case, on appeal, this court may well decide that it does not want to deal at all with the Kohler claim, which is the benefit of the Jacobson remand, Your Honor. The district court can do all the factual findings that might be necessary to the Kohler claim, but just then decide on appeal that you'd rather not reinstate relief. Do you consider it possible for the – for you to prevail on the Kohler claim and not on the NDAA claim? I say that only because you say overlap, and my question is whether the NDAA doesn't completely overlap the Kohler claim. That is – you know what I mean. Maybe I had asked it better the first time. Is there something – is it possible to win on the Kohler claim and lose on the NDAA claim is I guess what I'm asking. It is possible, Your Honor. In the plaintiff's estimation, that's the most unlikely result. It is clear that the 8772 claim is probably the clearest route to relief here. But there are unique defenses that Markazi has asserted with respect to the statutory claim, the 8772 claim under constitutional principles. Those would not be applicable to the Kohler claim, and so there is a possibility that we could win on the Kohler claim and lose on the NDAA claim. But it seems to me – that's interesting, but it seems to me that that would be the only reason to send both of them back because – although, I mean, we're trying to – the NDAA – if only the NDAA claim went back and you were successful on that, it would presumably happen more quickly than if both the NDAA claim and the Kohler claim went back. That's my concern. There would be less work for the district court to do, but certainly there's no reason to think that the district court can't handle both claims simultaneously, Your Honor. Thank you. Sorry. So thank you very much, Your Honors. Thank you, Counselor. You've reserved three minutes for rebuttal. We'll hear from the appellees. Good afternoon, Your Honors. This is Benjamin Kamenetsky of Davis-Polk for Clearstream Banking. Let me – with the court's permission, let me pick up where the dialogue with the court and Mr. Bonner left off. 8772, at plaintiff's behest, simplified what a district court needs to do in order to get the relief that the plaintiffs seek. That's why they went to Congress and got the law changed. And as Mr. Bonner said, it does two things. Number one, it takes the Kohler issue off the table by saying that irrespective of where these assets are, even if they're overseas, Congress is saying you can get these assets. That's something that Congress didn't explicitly do. He says it doesn't quite take Kohler off the table because there might be constitutional offenses to the – what I call the NDAA claim that are not available under Kohler. That is to say, there is not a complete overlap. There's not a complete – that's right, Your Honor. But the constitutional is that if you would just remand back the 8772 issue, have the district court decide anything under 8772, which would include any constitutional challenge. But that's – then it's just jurisdiction and that's it because issues that Your Honor, Judge Sachs, that you identified at the end of the Peterson 2 opinion, like comedy, has been stripped by the statute. That's my – yeah, that's my question. Yeah, it's a much more – the first question that I think Judge Latale has, isn't it more efficient? It's certainly more efficient to give fewer – if plaintiffs really are interested in speed and efficiency, it's much easier to decide fewer issues like jurisdiction and a constitutional issue, which probably wouldn't require much discovery, et cetera, rather than a more complex issue like international comedy and the like, which would probably require much more analysis by the district court. So indeed, if speed is the issue and to try to get this issue resolved, a narrow 8772 remand would do the trick. And quite frankly, now let me just circle back to the GVR order and what it means. Now, Mr. Bonner is correct at saying generally a GVR order doesn't suggest a particular result, but this isn't generally. I mean the Supreme Court was very clearly was moved by the government brief. Now, Judge Sachs, you know we disagree on whether the Peterson 2 decision was right or wrong, but putting that aside, it certainly entered a thicket, a hornet's nest as identified by the solicitor general of international comedy, foreign relations. I must say – forgive me if I'm being a little bit too smart, but it usually takes people more than 14 months to tell me that something I said was flawed. No, no, God forbid. It was brilliant. But it certainly – But it's been – I'm just saying it's a terribly long, complex process, and I can imagine the Supreme Court saying it's our problem. It should be at this point our problem and not their problem rather than implying anything at all. But Your Honor, if you read the – and I'm sure you have. If you read what the government said, the government – they said that it's not consistent with NML. It raises important foreign policy implications. The holding is flawed. With all due respect, what the NDAA did and what the Supreme Court did is it let you off the hook. It's clearly a – to suggest – Mr. Bonner suggested that the Peterson 2 decision, the FSIA holding in particular, is consistent with and follows precedent. It doesn't. It's the only case, full stop, that ever allowed or suggested that foreign sovereign assets located abroad are subject to execution. And Mr. Bonner suggested, well, that wasn't the issue in the case. The opinion states, and on page 87, this is – I'm quoting from the Peterson 2 decision. That's exactly what the issue was. We therefore turn – and this is a quote – to whether the principal asset issue, a right to payment held by Clearstream and located in Luxembourg, is subject to execution. And the way we, Your Honor, got there was by doing the Kohler two-step, bring the assets here and then do that. But that, Your Honor, as anyone – Congress has preempted that, it seems to me. Yes. So that's what – Congress preempted that. And so the question is why this is a decision that clearly the Supreme Court has reservations about. If they didn't have – No, no, no. Mr. Kamenetsky. I'm sorry. Kamenetsky. So we can talk about reservations of the Supreme Court, but as I understand it – you can correct me if I'm wrong at any point – what happened was that the Supreme Court asked the solicitor general's office for its views. The solicitor general, as you point out, expressed some reservation but said, let's wait. Congress is about to, it appears, pass the statute. The statute was passed, and soon thereafter the Supreme Court said, ah, there's a statute, and it's not just a generic statute, as you and your adversary point out. It specifically refers to this case by reference to the district court docket. And so go back, Second Circuit, and you consider it. So they're making their problem our problem, which is they're empowered to do that. So that's where we are. We've got a statute that we lost, but not in front of us necessarily, but in front of Congress in the sense that it says go back, redo these issues that might have been factors are now off the table. So now where should we proceed from that? You said that precisely right, obviously, and my only point is that because what you said is precisely right, there's no reason for the court at this point, and according to the plaintiff's own briefing, possibly at any point to revisit the original opinion and to reissue the part of the original opinion that's now off the table. I do have a reason other than this case for wanting whatever we do to be based on the statute and for us to essentially withdraw the conundrum part of the case. I mean, or does that have – is that strictly focused on the issues before us here? I'm not sure I understand. I'm trying to ask whether you have a broader jurisprudential or other interest in our not pursuing the Kohler's, whatever you call it, the conundrum argument other than whether you win or lose this case. There's nothing wrong with that. I'm just asking whether there are broader interests that you have that you're pursuing that we – and we ought to know at least that they're there somewhere. I'm not suggesting that's a bad thing. I used to – in my practice, I used to do that all the time worrying about other cases. But is that a consideration for you in this case? Absolutely. What the Peterson 2 decision or what we call the FSIM holding of the Peter 2 has extraordinarily broad implications. We represent Clearstream, which is a foreign bank that does business with entities all around the world, including central banks of almost every country. And what the broader holding is is that they're – depending on what state you're in, those assets are subject – foreign sovereign assets are subject to execution even if they're outside the United States. So you're far better off as an – your client as an institution, even if it loses in quotes, is far, far better off if it does so on this specific statute, which is limited to Peterson 2, than it is on the conundrum argument. Absolutely. And I think kind of the state of foreign sovereign immunity jurisprudence in general, instead of being radically changed by the Peterson 2 holding, we could save that issue for another day rather than having to do it now because you have the gift or your honors have the gift of the NDAA. Got it. Got it. Got it. Thank you, counsel. Your time has expired. We'll hear from next – next counsel. You might be on mute. Thank you. Your honors, may it please the court, this is Robert Cry for Bank Mercosur. As I see it, there's two separate issues. One is whether the court should reinstate the common law immunity ruling at this time. And then the second separate issue is what the court should do in terms of further proceedings. On that first issue, although the GDR order is short, we think that the only fair implication of that order under the circumstances was that the Supreme Court did not want this court just to reinstate the order that the court had just vacated. By its terms, the order says that the petition was granted, the decision was vacated, and the case was remanded for further proceeding. If the court had wanted that opinion reinstated, it simply would have denied the petition because then the parties would be in the exact same position that plaintiffs currently envisage. All parties told the Supreme Court that the NDAA has no logical implications for the correctness of this court's common law immunity ruling, so it doesn't make sense to suppose that the Supreme Court just wanted this court to think a little further about that when everyone already agreed that there was no logical connection. By contrast, it does make sense that the Supreme Court took the Solicitor General's concerns seriously about potential foreign relations implications from this broad common law immunity ruling, and in light of the newly enacted statute, wanted this court to further consider whether that now presented a potential alternative basis for decision. On the second issue about what should happen next, our understanding based on this court's precedence is that Jacobson remands are intended for situations where there's some discrete, factual, or legal issue on which supplementation of the record is needed, and that they're usually reserved for that circumstance. Here, by all accounts, whether on the common law immunity issue or on the statutory issue, there are going to be substantial proceedings on remands. Bank Markazi has raised constitutional challenges to this statute. On either of those two grounds, there's going to be a dispute over personal jurisdiction over Clearstream, which is relevant both under the NDAA and under common law immunity. There are findings that need to be made under the statute according to the terms of the statute, and then there are a number of other issues for common law immunity such as… Aren't the constitutional issues – don't they relate to personal jurisdiction? No, they don't. I mean there are those issues as well. But in addition to personal jurisdiction, there's also the question of whether the NDAA… And the statute itself. Right, whether it infringes Bank Markazi's rights because it denies a neutral decision maker. Those are the two constitutional issues, personal jurisdiction, the constitutional process, and so on, and then the constitutionality of the 872 statute itself. That's correct. Of course, we would reserve other challenges as well, but those are the ones we've elaborated on. I'm sorry. Why doesn't Jacobson remand do at least what your colleague who preceded you in argument wants, and that is give us perhaps a basis for deciding this case in such a way that we can just ditch the conundrum Kohler issue? This may be hard to understand. I don't mean this. That's not the right tone. But you should understand that we would prefer to decide things simply rather than make a complex law if we can. And it may very well be that the new statute allows us to do that. Why isn't the Jacobson remand a possible road to that destination? I don't think it would be an impossible road. My misunderstanding is the way this court has described Jacobson remand in the past seemed to be for a different situation than what we have here in terms of the scope of what's involved on remand. In terms of how we briefed the case, our main concern was that we understood the GDR order did not contemplate that this court would reinstate its common law immunity ruling. I'm not sure. I mean, you know, again, I don't all mean to be flippant. Jacobson remand is based on a case called, I guess, U.S. v. Jacobson. We created that rule. It's not in you won't find it in any statute book, I don't think any statutory compilation. Now, if you would prefer we do it a little bit different and call it Peterson remand rather than a Jacobson remand, I suppose we could do that. But why doesn't the fact remains the question in my mind remains as to why it isn't more efficient to get the statutory question directly focusing on Peterson to settle as soon as possibly, because that may resolve the entire case rather than going and remand just for that. And call it some kind of, as I said, another kind of remand. Why not do that? And is there some is there is there a barrier to our doing that? And then considering after we hear the answer that whether we want to what we want to do or what we think is appropriate, I should say, to do with respect to the Kohler issue. Right. So, you know, the plaintiffs in their brief suggested that all those issues be sent back. And in our response, we didn't object to that. I don't so I don't you know, that doesn't mean we necessarily support the opposite view. I just don't think we've taken a position on that one way or the other. Although I understand clear stream and now advocating different views, I you know, from our perspective, the important point is, is that the the opinion that we challenged in the Supreme Court was vacated and should stay vacated until until there's been further proceedings on the statute. You agree, you agree that there are some things first that can be reinstated and that in any event, we need to reinstate something in order for us to remand back some of the issues that we've been discussing. Is that correct? So we haven't made any argument against reinstating the releases or the location of the assets. You know, I want to be clear that that does not mean we concede jurisdiction. I want to be very clear that we reserve all our jurisdictional and immunity and other other objections. So we've not met. So those you agree that they could be. Yeah, we have we have an objective. Okay. Thank you, counsel. Thank you. Information that's great. Your time is just about expired. You know, the only last point I would make then is on the issue of whether to issue the mandate forthwith. I don't understand the basis for that request either. The, you know, the typical process is the parties would have 21 days to to to seek further review or 14 or 21 days to seek further review before this court in the Supreme Court. And that may not likely be necessary. But on the other hand, wait a minute, wait a minute, wait a minute. So, so, Mr. So if we had, I guess it would have to be by thinking about reinstated just the release the location of assets and then decided to deal with Jacobson remand. Do you think that you could use that to go back up to the Supreme Court? I'm not I'm not saying that at all. But what I am saying is we would want the opportunity to see what this court says before making a decision about what. But if that's all we did, then why wouldn't we just do it right away issue the mandate right away. I mean, it doesn't have to be right. If not forthwith, then in two weeks, as opposed to the full amount of time. Well, my understanding is that the full amount of time that's going to stay is just 21 days so that's that's the process so I don't my point is simply that when the remand proceedings are going to be a year long process by all accounts anyways shaving 21 days off that schedule, just to deny us the ability to review this court's decision and decide whether something unforeseen requires that we take some further steps just doesn't make a lot of sense to me. Thank you very much. Thank you. I'm inspired. We'll hear from. Bye. Bye. Bye. Bye. Thank you. I'll be brief. This is you go call on behalf of Bangor by, you know, we'll rest on our briefs obviously we've had a personal jurisdiction defense has been floating around for many years and then like decided as soon as possible but given the tenor of the argument here today. I'll just say that our personal jurisdiction defense really is the same regardless of whether we're in the color box or whether we're in the, in the NBA box. And so for those reasons we will accept whatever the court wants to do in terms of a remand. And in terms of reentering. Is it your view is that your view that what Supreme Court did anything the Supreme Court did other than just a blank vacature told us that with respect to this personal jurisdiction defense, we got it wrong. Well, I don't think that the court, the Supreme Court's decision even a single address that they granted our petition. But, you know, we previously rejected, we previously rejected. I think the argument that you, you're preserving. Is that correct. Yeah, that's correct. We wanted you all to decide it on appeal and you decided not to do that, and the Supreme Court vacated that but in light of what I hear what the court saying. We're satisfied to go back and raise our personal groups, our personal jurisdiction defense and other defenses in the first instance in the district court. Thank you counsel. Mr Bonner you've retained three minutes for rebuttal. Thank you, Your Honor, I'd like to just address a few issues briefly. First of all, with respect to the GVR order, there was some suggestion and argument that it had an implication that the Supreme Court wanted to reverse the color decision and Peterson to. That's just false. The language of the order is quite clear. It's one sentence, it just says to reconsider the decision based upon what happened in the statute, the statute has no impact on the color analysis and as a result, there's no reason to for the court to reverse its decision with respect to that issue. There was also some discussion in the argument about various policy issues that might justify holding color and abeyance or reversing it. This court already considered all of those arguments. And in addition to that the NML court considered and rejected almost exactly the same arguments as stated by the Solicitor General, and I think it's important to note that the parade of horribles that the defendants and the Solicitor General imagined have not manifested themselves. It's been seven years since NML was decided. It's been three years since this court decided Peterson too. We don't have a single example of something happening either against the United States, or in terms of trying to collect the assets of a foreign sovereign anywhere. The defendants didn't cite anything that involved either opinion leading to the parade of horribles they talk about. With respect to the Jacobson remand, I think it's important just to emphasize that in plaintiff's view, the color related issues that the court had outlined at the end of its opinion should go back to the district court, even if the court decides not to reinstate its opinion. That way, we'll only have one appeal in the event that the defendants succeed in improving the defense with respect to the 8772 claim. And with respect to the suggestion that the court should just hold the color claim and abeyance, the defendants haven't cited any case. There's not one ever in the history of American jurisprudence, where a court just held a claim and abeyance to wait and see what would happen in a district court with respect to another claim. And the reason for that is that it's just grossly inefficient. Isn't it a little different here? It's a rare claim, a rare, rare piece of litigation in which Congress comes in and passes a statute that essentially says, here's how you're going to decide the case. I mean, it's a bit unusual situation in any event, it seems. No doubt, Your Honor, that this is a unique situation, but that doesn't weigh in favor of doing something that no court has ever done before with respect to holding a claim and abeyance. And with respect to the Jacobson remand, there's no harm, no foul. Even Mr. Kamenetsky agrees that if you just send these issues back to the district court for the court to decide and you don't reinstate the opinion with respect to the color issues, they don't have any long-term implications for Clearstream or other entities that are trying to traffic in the assets of terrorist states. Finally, with respect to issuing the mandate immediately, Your Honor, nobody addressed the fact that yesterday in Luxembourg, Malkazi was trying to prevent these assets from ever being collected by the plaintiffs. We need to get back to the district court and to get this case finalized. Our plaintiffs deserve an opportunity after 30, 70 years to see whether they can succeed on the merits. And for those reasons, as well as the reasons we've outlined in our briefs, we request that the court reinstate Peterson 2 and remand this entire case to the district court. Thank you, counsel. Thank all, counsel. We will obviously reserve decisions and try to decide this as expeditiously as possible. That concludes this argument calendar, so I will ask the clerk to adjourn court. Court stands adjourned.